THE CITIZENS' MUTUAL INSURANCE Co. et al. *v.* C. H. FOSTER et al., and G. W. FOSTER *v.* THE CITIZENS' MUTUAL INSURANCE Co. et al., and A. C. FOSTER *v.* THE CITIZENS' MUTUAL INSURANCE Co.

Creditor's Bill — Demurrer.

> A creditor's bill filed by only a part of the creditors of the defendant is not obnoxious to a demurrer on the ground that the bill does not make all the creditors parties to the bill and such demurrer is properly overruled.[1]

The firm of Sims, Foster & Co., merchants, made a general assignment for the benefit of their creditors, in 1881, to Peter Stark, assignee. The assignment provided that the individual debts of the partners should first be paid out of the assets of the individual members of the firm and firm debts paid out of the firm assets, and any assets of the individual members remaining after paying the individual debts should be applied to the payment of the firm debts.

---

[1]

Prior to act of January 26, 1898, only a creditor whose debt was due could invoke the remedy. Browne *v.* Hernshein, 71 Miss. 574.

Code of 1880, §§ 1843–1845, reads as follows:

"1843. The said courts shall have jurisdiction of bills exhibited by creditors, who have not obtained judgments at law, or having judgments, have not had executions returned unsatisfied, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying, or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors, as if complainant had a judgment and execution thereon returned 'no property found.'

"1844. Upon such a writ of sequestration or injunction, or both, may be issued upon like terms and conditions as such, writs may be issued in other cases, and subject to such proceedings and provisions thereafter, as are applicable in other cases of such writs.

"1845. The creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against *bona fide* purchasers before the service of process upon the defendant in such bill."

Several complainants under different judgments against the same debtor may join in a creditor's bill seeking to set aside a fraudulent conveyance. Buckingham *v.* Walker, 51 Miss. 491.

The want of proper parties if apparent on the face of the bill may be taken advantage of by demurrer. Rodd *v.* Durbridge, 53 Miss. 694.

G. W. Foster, one of the partners, was employed by the assignee to aid in the collection of the assets. He collected some money and purchased with it some real estate, taking title in his own name. Stark, the assignee, filed several suits in chancery against him, seeking to subject that property to the payment of the firm debts of Sims, Foster & Co. These several suits were compromised and settled by Stark conveying the property to Mrs. C. H. Foster, wife of G. W. Foster, she agreeing to pay the assignee $6,000 cash and assume the individual debts of G. W. Foster, who owed W. R. Foster, J. C. Foster, and Mrs. A. C. Foster, and each of these held deeds of trust on the property conveyed to Mrs. C. H. Foster.

The Citizens' Mutual Insurance Company and some other creditors of Sims, Foster & Co., filed the bill in this case against G. W. Foster, Mrs. C. H. Foster, Mrs. A. C. Foster, W. R. Foster, and J. C. Foster, seeking to subject the property conveyed by Stark, the assignee, to the payment of their debts, alleging that the property was the individual property of G. W. Foster, and purchased and paid for by him from the assignee, taking the title in the name of his wife, Mrs. C. H. Foster; that the debts of Mrs. A. C. Foster, J. C. Foster, and W. R. Foster were fictitious, and that while the compromise by which the property was conveyed to Mrs. C. H. Foster by the assignee was in good faith, so far as he was concerned, yet, as between G. W. Foster and Mrs. C. H. Foster, it was fraudulent and intended to get the property in her name, and that G. W. Foster paid the consideration therefor.

The original bill alleged that G. W. Foster was a nonresident of the State, and prayed for an attachment against the property. G. W. Foster answered the bill, denying that he was a nonresident. The bill was then amended, omitting the attachment feature. Insurance Co. v. Foster.

G. W. Foster demurred to the bill, assigning as a ground of demurrer that the bill cannot be maintained as a creditor's bill, because all the creditors of Sims, Foster & Co. are not made parties, nor the bill drawn so that they can become parties. The demurrer was overruled, and G. W. Foster appeals from that decree.

Mrs. A. C. Foster filed a plea to the bill, setting up that in the suits filed against G. W. Foster et al. and herself that said assignee made all the charges and allegations against the validity of her

trust deed, which complainants now make, and that the same solicitor represented him; that he knew as much about its invalidity as complainants know; that she answered that bill under oath, as she was legally bound to do, and that the bill was dismissed in open court at the cost of G. W. Foster, and was intended as a final settlement and adjudication of all matters in controversy and was as to her claim *res adjudicata* of the question of its validity. The court disallowed this plea, and Mrs. A. C. Foster appealed from that decree.

W. R. and J. C. Foster filed joint and several pleas, setting up the compromise and agreement with Stark, the assignee, in the chancery suits, and that it was made by said assignee representing complainants as creditors of Sims, Foster & Co., with a knowledge of all the facts and charges of fraud which complainants now make. They denied that their debts were fictitious. This plea was allowed by the court.

Mrs. C. H. Foster filed a plea, setting up the compromise, and alleging that she assumed all the individual debts of G. W. Foster as part consideration for her deed, and as to the further consideration of $6,000 cash, she answered, denying all fraud. This plea was allowed by the court.

The complainants appealed from the decrees allowing these pleas.

APPEALED from Chancery Court, Clay county, F. A. CRITZ, Chancellor.

Affirmed as to G. W. Foster. Reversed and remanded as to others, May 18, 1885.

*Attorneys for appellants (Insurance Co.), Fred & F. M. Beall (Fosters), Barry & Beckett.*

*Attorneys for appellees (Insurance Co.), Fred & F. M. Beall (C. H. Foster), Barry & Beckett.*

Brief of Insurance Company, Fred & F. M. Beall.

1. First we will take up the demurrer of G. W. Foster, and the order overruling same. This comes to this court upon the separate appeal of G. W. Foster.

The bill as originally filed was a creditor's bill, and under the assumption that Foster resided in the State of Alabama, and was a nonresident, a prayer for an attachment against certain named property was inserted. Section 1832, Code 1880.

And at the same time, the full benefit of section 1843 was denied.

The two remedies are clearly not incompatible. But when Foster comes in and by his plea denied that he was a nonresident, and submitted himself personally to the jurisdiction of the court, the complainants, when they went to amend their bill, simply omitted the attachment feature. The case cited of Miazza v. Yerger, 53 Miss. 135, has no application at all. Clark v. Hull, 31 Miss. —.

The essential character of the original bill in this case was a creditor's bill; that character is fully retained in the amended bill. * * *

The other point made by counsel for G. W. Foster is that the bill cannot be maintained as a creditor's bill, because all the creditors of Foster are not made parties, nor the bill drawn so that they can become parties. The bill, both original and amended bill, is filed under sections 1843 to 1845 inclusive, Code 1880.

In other words, the proceeding is statutory — it is just such a bill as the complainants could have filed if they now had judgments against Foster, and judgment liens on his property. * * *

But this question cannot be served by demurrer any way, for there is nothing in the bill to show that there are any other creditors. It must first be made to appear by a proper pleading that there are other creditors before this question can be raised. * * *

The ground of demurrer that Stark, the assignee, was not made a party was neither relied on in the court below, nor is it relied on in this court by counsel for Foster. The above are the only two points relied on by him.

It will be observed that Foster filed no answer denying the fraud charged against him in the bill. * * *

The whole gist of the bill is fraud, and Foster is the main actor in this fraud, the grand schemer and originator of all the fraud, and yet he makes no answer to the fraud charged. We can see no legal reason why the general rule, which requires the fraud charged to be assured, should not apply in this case, if the fraud is properly pleaded, as we think it is. * * *

Second. We deduce from the authorities the following rules which we invoke:

1. A plea in bar, if it does not go to the whole bill, must express to what part of the bill the defendant pleads. And if the parts of the bill to which the plea extends are not definitely expressed, the plea is bad and should be overruled.

2. The plea should reduce the case to a single issue, and that issue should be a material issue.

3. The plea should clearly and distinctly aver all the facts necessary to render the plea a complete equitable defense to the bill, so far as the plea is intended to extend. 1 Daniel Chancery Pleading and Practice, 608 *et seq.;* Story's Equity Pleading, § 659 *et seq.*

Tested by these plain elementary rules, we think the plea is bad, and should have been so held. * * *

The bill charges against this defendant fraud, collusion, and guile. Such charges are required to be denied clearly in the plea, as well as in the answer. Story's Pleading, §§ 684, 685; 1 Daniel Pleading and Practice, 611.

If any part of the defense attempted to be made by a person is bad, the whole must be overruled. 1 Daniel, 611, 612. * * *

This plea sets up the compromise made by Foster with Stark, assignee, and pleads it in bar to the amended bill so far as the same seeks to set aside the trust deeds of A. C. Foster, W. R. Foster, and J. C. Foster. * * *

These creditors were not parties to the litigation, nor the disputes between Foster and Stark; they knew nothing of these matters. They had nothing whatever to do in the making of the deed whereby Stark was made the assignee, and whether or not the creditors of Foster are bound by the acts of Stark depends upon whether they ever agreed to be so bound. Kerrison, Assignee *v.* Stewart et al., 93 U. S. 155; Bigelow on Estoppel, 82 *et seq.,* 98 and note 5; Champion *v.* Cayee, 54 Miss. 695; Yandell *v.* Pugh, 53 Miss. 295; McPike *v.* Wells, 54 Miss. 136.

If Stark had been chosen assignee by the creditor of Foster, or mutually by the creditors and debtors, then he could have barred the creditors, not otherwise. * * *

I do not dispute the proposition that the compromise of a disputed claim is a valid contract, provided it is free of fraud or mistake.

That is not the question here — it is, was Stark, the assignee, empowered to compromise the claim and demand of the creditors. * * *

But it is said we do not charge any fraud against Stark in making that compromise. We reply that Stark is a volunteer; he is not our guardian; he holds his position alone upon the authority of Foster. He is Foster's chosen assignee, not our respresentative. * * *

It does not even appear that the creditors ever accepted any benefit under the assignment, that any money was ever paid them by the assignee, and the fact is, they never did. We have nothing at all to do with the assignment. We are simply creditors of Foster, seeking to collect our debt, and to that end, to subject whatever property we find in his possession. * * *

What has been said in reference to the plea of Mrs. C. H. Foster will in the main apply to the plea of W. R. Foster and J. C. Foster, which was also held good by the court below. * * *

It is a rule of equity pleading, that whenever matters of fact are introduced in the bill, which, if true, would destroy the effect of the matter pleaded, the plea will be overruled. I Daniel Chancery Pleading and Practice, 613; Id. 624, 625.

The bill charges that Foster obtained the compromise by fraud, that he actually forced it out of Stark by a system of fraudulent acts, and that his wife, son, sister, and cousin aided him in all this.

Third. The plea of Mrs. A. C. Foster was overruled by the court and she appeals therefrom. This plea is found on page 152.

This plea sets up the dismissal of the suits instituted by Stark, assignee, against Foster as *res adjudicata* of the questions of the validity of her claim against Foster.

There was in fact no adjudication of this, or any other question in these suits. The suits were settled by compromise, the agreement of compromise reduced to writing, and made of record, and then the cases were dismissed at Foster's costs, but even if there had been an adjudication in those suits, the complainants in this suit were not parties to that litigation. There must have been an actual adjudication, a determination in fact, by the court, so say all the authorities. I Daniel Chancery Pleading and Practice, 659 *et seq.*; Arden *v.* Patterson, 5 Johns. Ch. 44; Story's Equity Pleading, § 793.

* * * * * * * * * *

Brief of C. H. Foster et al., Barry & Beckett:

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

There is then but a single question presented by the plea of J. C. Foster, and that is, is the compromise of a disputed claim valid.

It is held that an assignee or trustee may make in good faith a valid compromise of a disputed claim.　Long *v.* Shackleford, 25 Miss. 559, 567; Berry *v.* Parks, 3 S. & M. 638–640; Perry, Trusts, §§ 185 and 482.

Compromise of a disputed claim is a valid contract.　56 Miss. 537; 57 Miss. 738; 56 Miss. 508, 509; 52 Miss. 494–497; 50 Miss. 258, 259; 41 Miss. 712–716; 28 Miss. 69; 6 Wait's Actions & Defenses, 696, 697, § 8; 1 Story's Equity Jurisprudence, §§ 121, 130, 131, 131a, and 131, note 5.

In our later decisions, it is held that in order to make a compromise of a disputed claim valid, there must be something due, and it must not be a purely fictitious claim.　55 Miss. 77; 58 Miss. 822; 59 Miss. 45.

The plea conforms to these decisions by denying that the debt and trust deed were fictitious.　It shows that if there was any fraud, that the assignee knew as much about it as complainant, now, and that it was in fact the issue involved, and our court holds that it is competent to compromise fraud, as anything else, where there is good faith.　Bass *v.* Nelms, 56 Miss. 508, 509.

All that is necessary is that the assignee act in good faith, and this is expressly admitted in the bill.

There is also but a single point presented by the plea of Mrs. C. H. Foster, and that is, is she bound by the compromise deed.

It is useless to refer to authorities on this point. She signed the deed and agreement, and holds the property under it. \* \* \*

With her, it is not a question of whether the debts were fictitious or not.　She agreed to do certain things as a consideration for the land, and she is estopped to inquire into whether these debts were fictitious or not. \* \* \*

We have not referred to authorities to sustain the form of the pleas in this cause, because no attack has ever been made on the forms of them so far as we know, except that in the argument of the sufficiency of a plea, complainants complain that they have a right to open and conclude the argument, while the pleader in each case claimed and was accorded that right by the court below,

and complainants excepted. Of course this would be no ground for reversing a case in chancery tried by a chancellor without a jury, but we also desire the court to express an opinion as to the correct practice. The only authority we have been able to find announces that the defendant has this right, and the court below acted on that. 1 Daniel Ch. Pleading and Practice, 694.

The demurrer, plea, and answer of Mrs. C. H. Foster is found in 3 Daniell Ch. Pleading and Practice, 2088.

There is no answer in support of the plea of W. R. and J. Collier Foster. It is a joint and several plea in the prescribed form. 1 Daniell Ch. Pleading and Practice, 681.

An answer in support of a plea is only required where the frauds charged in the bill, if true, would overrule the plea, and as we have shown, it was the very alleged frauds which were compromised. I Daniel Ch. Pleading and Practice, 625; Story's Equity Pleadings, §§ 681 and 615; Bass v. Adams, 56 Miss. 508, 509.

And an answer in support of a plea being required under oath as to those matters in which the party is specially interrogated is never required in any case where the defendant is not specially interrogated. I Daniel Ch. Pleading and Practice, 615, 616; Story's Equity Pleadings, § 682.

And besides, where an answer under oath is waived, it can neither be compelled, nor excepted to. Story's Equity Pleadings (8 ed.), § 875a, bottom of note 6, p. 742.

Brief of G. W. Foster, Barry & Beckett:

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

The first point is, can an attachment suit in chancery be amended into a statutory creditor's bill?

Second. Can a statutory creditor's bill be maintained by a part of the creditors, or must it be on behalf of all, or all be made parties?

First, it is said, that a party cannot, by an amended bill, change the structure and essential character of his suit, and if he attempt to do so the amended bill will be demurrable. Miazza v. Yerger, 53 Miss. 135.

There are many points of difference between an attachment in chancery and the statutory creditor's bill. First, in the attachment, it is not necessary that there should be a fraudulent conveyance, as the attachment of the property is to gain jurisdiction

against a *nonresident* or absent or absconding debtor, but of course a fraudulent conveyance will not stand in the way of the attachment, either at law or in equity. Code of 1880, § 1832.

Second. In the attachment suit the land may be levied on. Code of 1880, § 1899.

Writs of sequestration may be levied on general property. Section 1900.

Garnishment may be issued for debtors. Sections 1832, 1898.

Under the statutory creditor's bill neither an attachment nor garnishment can issue. The only writs are those of sequestration and injunction. Code of 1880, §§ 1843, 1844.

Third. In the one case the lien commences on the levy of the writs. Sections 1898, 1902. In the other the lien commences from the filing of the bill. Section 1845.   *   *   *

But it may be said that there are enough statements in the original bill to have made it a pure creditor's bill in the first instance, but we have shown that fraudulent conveyances are no objection to an attachment bill, and that the bill was actually filed as an attachment bill. It expressly asks its relief under Code of 1880, §§ 1832, 1898, 1902.

And attachments and garnishments were actually issued, levied, and served. What is to become of these?

The same point was made in Miazza *v.* Yerger, 53 Miss.

In that case it was a bill to establish a trust in real estate, and " there were also enough allegations in the bill to show that complainant had a dower interest," and " there was also a prayer for relief as to this dower interest." 53 Miss. 136.

And yet when complainant, on the sustaining of a demurrer to the original bill, attempted to amend to a bill in regard to this dower interest, it was not allowed. Miazza *v.* Yerger, 53 Miss. 136, 140; Story on Equity Pleadings, § 312.

Second. Should the statutory creditor's bill be filed on behalf of all such creditors as choose to come in and contribute to the expenses?

It is held that where property paid for by the husband is conveyed to his wife (as is alleged in this case), it may be reached in equity without a previous judgment and execution. Case *v.* Beauregard, 101 U. S. 690, 691.

And in many of the States it is held, without any statute, that a judgment and execution at law is not necessary to enable a

creditor to sustain a bill to vacate fraudulent conveyances. They are collated in Case v. Beauregard, 101 U. S. 690. * * *

There is no answer denying the fraud in this case, because, first, it is not a general demurrer. Story on Equity Pleadings, § 455, and notes 2, 3; Barton's Suit in Equity, 107, 108. And, second, the charge of fraud, even if true, would not affect these grounds of demurrer. 15 Miss. (7 S. & M.) 456; 21 Miss. 793; 41 Miss. 460; 41 Miss. 712; 6 How. (7 Miss.) 311; Story on Equity Pleadings, § 465.

Brief of A. C. Foster, Barry & Beckett:

* * * * * * * * * * * *

To render a former decree at bar it is not essential that the party should be named in the former suit, if his rights were there represented. Story on Equity Pleadings, § 783 (b). * * *

It is laid down as the universal rule that a judgment or decree for or against an assignee, in regard to the assigned property, where he represents the creditors, is, in the absence of fraud and collusion between him and the defendant, binding on the creditors. Kerrison v. Stewart, 93 U. S. 155; Perry on Trusts, § 15; Edrington v. Jefferson, 111 U. S. 774; Ashton v. Atlantic Bank, 3 Allen, 219, 220. * * *

The suits we have referred to have reference to the trust property in the possession of the trustee, and hence are in the nature of proceedings *in rem* which bind the beneficiaries and all the world, as is also the nature of the case at bar.

It is distinctly stated in the bill that the assignee acted in the suit *in good faith*. So there was no collusion on his part. * * *

It is a general rule that a party cannot take so much of a contract as is beneficial to him and reject the remainder, but he must accept or reject all. The creditors then must accept the compromise as made for them by the assignee, or reject it entirely. We do not deny that they may show that the $6,000 and any other consideration was actually paid by G. W. Foster, but we do deny that they can show the consideration was different from that expressed in the compromise deed, or that it was not an adequate consideration. They can show that G. W. Foster is the real owner of the property, but they cannot show that the grantee, whether it be her or Mrs. C. H. Foster, was not to pay the con-

sideration expressed in their deed, made for them by their assignee.   \* \* \*

The plea is sworn to, though that is not required in pleading a former decree.   Story on Equity Pleadings, §§ 696, 700.

It is not accompanied by any answer denying the fraud, because, first, Mrs. A. C. Foster is not interrogated as to any fraud. Story on Equity Pleadings, § 682; 1 Daniell on Chancery Pleading and Practice, 615, 660, 661.

Second. Because the charges of fraud were the issue in the former suit, and an answer would overrule the plea.   Story on Equity Pleadings, §§ 681, 688.

Third. The bill waives an answer under oath, and the object of the answer is to put the defendant on his oath.   Story on Equity Pleadings, §§ 672, 673.

OPINION.— PER CURIAM.

We affirm the decree overruling the demurrer of G. W. Foster to the amended bill, and forasmuch as the pleas may be a good defense, and yet there may be matter disclosed in evidence which, even if the pleas are true, may avoid them, in order not to preclude the complainant by allowing the pleas, we reverse the decrees allowing the plea of C. H. Foster and that of W. R. and J. C. Foster, and disallowing the plea of A. C. Foster, and direct a decree saving the benefit of the said several pleas to the several defendants at the hearing, and the cause is now remanded for further proceedings in the Chancery Court.

Costs here are to be divided, except that the $50 attorney's fee shall be taxed to G. W. Foster, as provided by section 1424 of the Code.